# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE:                                                       **CASE NO.: 6:16-bk-00994-RAC**
                                                                          **CHAPTER 7**

**Patchiammal Benjamin
aka Pachi Benjamin,**

  **Debtor.**

_____/

### RESPONSE TO DEBTOR'S OBJECTION AND SUPPLEMENT TO
### SECURED CREDITOR'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**COMES NOW**, WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR SOUNDVIEW HOME LOAN TRUST 2007-OPT5, ASSET-BACKED CERTIFICATES, SERIES 2007-OPT5 ("Secured Creditor"), by and through undersigned counsel, hereby files its Response to Debtor's Objection and Supplement to Secured Creditor's Motion for Relief from the Automatic Stay filed by Debtor PATCHIAMMAL BENJAMIN AKA PACHI BENJAMIN and, in support thereof, states as follows:

1.      Secured Creditor holds a first mortgage on the Debtor's real property located at 1853 Concord Dr., Apopka, FL 32703-7677 by virtue of a Mortgage recorded on September 06, 2007, Book 09424, Page 3064, in the Public Records of Orange County, Florida.  Said mortgage secures the obligations of the Debtor to Secured Creditor pursuant to a note in the amount of $168,000.00.

2.      On April 13, 2016, Secured Creditor filed its Motion for Relief from the Automatic Stay.

3.      On May 06, 2016, Debtor filed her response and objection to Secured Creditor's Motion for Relief from the Automatic Stay alleging that Secured Creditor does not have standing to obtain relief from the stay.

4.       Secured Creditor obtained a Final Judgment of Foreclosure in state court on the subject property on June 30, 2014. The original Note and Mortgage were filed with the state court on April 11, 2014, along with a copy of the Recorded Assignment of Mortgage. A true and correct copy of the Final Judgment of Foreclosure, the Notice of Filing of the original Note and Mortgage and the Notice of Filing of the Recorded Assignment of Mortgage are attached hereto as **Exhibit "A."**



14-75729 - AIB



5.      The Debtor has failed to show any legitimate reason as to why Secured Creditor does not have standing or reason for Secured Creditor's Motion to be denied. The Debtor appears to have been using a multitude of stall tactics not only on this Court but also in state court. Since the entry of the Final Judgment, Debtor has filed two Notices of Appeal, which were dismissed for failure to pay; two suggestions of bankruptcy, which cancelled two foreclosure sales; and a Motion to Set Aside Judgment based on standing which was denied on December 17, 2015.

6.      Furthermore, after additional research into Debtor's bankruptcy history, Secured Creditor has discovered the automatic stay has already been terminated pursuant to 11 U.S.C § 362(c)(3). The Debtor had previously filed bankruptcy on September 09, 2015, which was dismissed on October 06, 2015. The current bankruptcy was filed on February 17, 2016, within the preceding 1-year period of the dismissed case; therefore, the stay was terminated on March 18, 2016.

7.      Debtor has no basis for her objection to Secured Creditor's Motion for Relief; therefore, Debtor's objection should be overruled.

        **WHEREFORE**, Secured Creditor respectfully requests this Court overrule Debtor's objection and grant Secured Creditor relief from the automatic stay, and for such other and further relief as the Court may deem just and proper.

        **I HEREBY CERTIFY** that on June 7, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via CM/ECF or United States Mail to the following:

Patchiammal Benjamin
aka Pachi Benjamin
1853 Concord Drive
Apopka, FL 32703


Petitioning Creditor
Rashan Wood
940 Stone Chapel Ct
Apopka, FL 32712


Trustee
Carla P Musselman
1619 Druid Road
Maitland, FL 32751

U.S. Trustee
United States Trustee - ORL7/13
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-241-1969


By: <u>Alicia Battern</u>
Alicia Battern, Esquire
Florida Bar No. 117610
Communication Email: abattern@rasflaw.com

14-75729 - AIB



IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA, CIVIL ACTION

WELLS FARGO BANK, N.A., AS TRUSTEE FOR
SOUNDVIEW HOME LOAN TRUST 2007-OPT5,
ASSET-BACKED CERTIFICATES,SERIES 2007-OPT5,

    Plaintiff

    vs.

PATCHAIMMAL BENJAMIN, et al.

    Defendant(s)

CASE NO.: 2012-CA-007637-O

FILED IN OPEN COURT 6.30.14
Clerk, Cir. Ct., Oran___
By _____

### FINAL JUDGMENT OF FORECLOSURE

**THIS ACTION** was heard before the Court on Plaintiff's Motion for Summary Final Judgment on June 30, 2014. On the evidence presented, **IT IS ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment is **GRANTED**.

IT IS ADJUDGED that:

1.    Plaintiff, WELLS FARGO BANK, N.A., AS TRUSTEE FOR SOUNDVIEW HOME LOAN TRUST 2007-OPT5, ASSET-BACKED CERTIFICATES,SERIES 2007-OPT5, 6501 Irvine Center Drive, Mail Code DDIT1, Irvine, CA 92618, is due:

| | |
|---|---|
| Principal: | $165,318.46 |
| Interest to the date of this judgment: 12/01/09 to 06/30/14 | $60,142.45 |
| Late Charges | $2,394.90 |
| BPO/Appraisals | $100.00 |
| Escrow Advances/Balances | $9,851.61 |
| Property Inspections | $52.50 |
| Property Preservation | $802.00 |
| Prior Servicer Property Valuations | $424.00 |
| Prior Servicer Property Inspections | $178.40 |
| Attorney's Fees | $2,050.00 |
| Filing Fee | $912.50 |
| Service of Process | $670.00 |
| Issuance of Summonses | $80.00 |
| Title Search | $250.00 |
| Title Exam | $175.00 |
| Title Update | $50.00 |
| Foreclosure Property Registration | $200.00 |
| Recording Lis Pendens | $18.00 |
| Mediation Services | $100.00 |
| | |
| **TOTAL** | **$243,769.82** |

That shall bear interest at the rate of 4.75% a year

2.    Plaintiff holds a lien for the total sum superior to all claims or estates of defendant(s), on the following described property in Orange, Florida:

Lot 68, SURREY PARK, according to the plat thereof, as recorded in Plat Book 25, Page 41, of the Public Records of Orange County, Florida.

Exhibit A

also known as: 1853 CONCORD DR, APOPKA, FL 32703

Our Case / File No.: 2012-CA-007637-O / CA11-07250 /MS

3.    If the total sum with interest at the rate described in paragraph 1 and all costs accrued subsequent to this judgment are not paid, the clerk of this court shall sell the property at public sale on _*August 6, 2014*_ to the highest bidder for cash, except as prescribed in paragraph 5, at at www.myorangeclerk.realforeclose.com in accordance with Section 45.031, Florida Statutes, using the following method (CHECK ONE):

☐ At the above location, beginning at _____ on the prescribed date.

☑ By electronic sale beginning at _*11:00am*_ on the prescribed date at the listed website,

4.    Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the clerk if plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale shall be responsible for the documentary stamps payable on the certificate of title. If plaintiff is the purchaser, the clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full.

5.    On filing the certificate of title the clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of plaintiff's costs; second, documentary stamps affixed to the certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 1 from this date to the date of the sale; and by retaining any remaining amount pending the further order of this court.

6.    On filing the certificate of sale, defendant(s) and all persons claiming under or against defendant(s) since the filing of the notice of lis pendens shall be foreclosed of all estate or claim in the property, except as to claims or rights under chapter 718 or chapter 720, Florida Statutes, if any. Upon the filing of the certificate of title, the person named on the certificate of title shall be let into possession of the property.

7.    Jurisdiction of this action is retained to enter further orders that are proper including, without limitation, a deficiency judgment, to allow for supplemental complaint to add an omitted party post-judgment, alter, amend, modify or vacate judgment, and correct, amend, or vacate Certificate of Title.

8.    Plaintiff's Final Judgment is **GRANTED** against all Defendants listed by name:
PATCHAIMMAL BENJAMIN; BANCO POPULAR NORTH AMERICA, ORANGE COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF FLORIDA; WILSON BENJAMIN.

**IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.**

**IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 425 N. ORANGE AVENUE, SUITE 410, ORLANDO, FL 32801 (407) 836-2000, WITHIN 10 DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.**

**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT. IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS. IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT COMMUNITY LEGAL SERVICES OF MID-FLORIDA, INC., 1036 WEST AMELIA STREET ORLANDO, FL 32805, (407) 841-7777, TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE**

TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT COMMUNITY LEGAL SERVICES OF MID-FLORIDA, INC., 1036 WEST AMELIA STREET ORLANDO, FL 32805, (407) 841-7777, FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

ORDERED at Orange County, Florida, on

CIRCUIT JUDGE

Copies Furnished To:
FLORIDA FORECLOSURE ATTORNEYS, PLLC
4855 Technology Way, Suite 500
Boca Raton, FL 33431
and
All Persons on attached Service List
Plaintiff: WELLS FARGO BANK, N.A., AS TRUSTEE FOR SOUNDVIEW HOME LOAN TRUST 2007-OPT5, ASSET-BACKED CERTIFICATES,SERIES 2007-OPT5
Address of Plaintiff: 1661 Worthington Road
Suite 100
West Palm Beach, FL 33409

## SERVICE LIST

**WELLS FARGO BANK, N.A., AS TRUSTEE FOR SOUNDVIEW HOME LOAN TRUST 2007-OPT5, ASSET-BACKED CERTIFICATES, SERIES 2007-OPT5**

vs.

**PATCHAIMMAL BENJAMIN**

FLORIDA FORECLOSURE ATTORNEYS, PLLC
4855 Technology Way, Suite 500
Boca Raton, FL 33431


WILSON BENJAMIN
2155 AMERICANA BLVD
ORLANDO, FL 32839


BANCO POPULAR NORTH AMERICA
C/O ITS PRESIDENT, VICE-PRESIDENT OR ANY OTHER OFFICER AUTHORIZED TO ACCEPT SERVICE
7 WEST 51ST STREET
NEW YORK, NY 10019


PATCHAIMMAL BENJAMIN
1853 CONCORD DRIVE
APOPKA, FL 32703


ORANGE COUNTY ATTORNEY`S OFFICE (ADVERSE ATTORNEY FOR ORANGE COUNTY, A POLITICAL
SUBDIVISION OF THE STATE OF FLORIDA)
201 S ROSALIND AVE
FL 3
ORLANDO, FL 32801-3527

Our File No: CA11-07250  / MS

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT IN AND FOR
ORANGE COUNTY, FLORIDA, CIVIL ACTION

| | |
|---|---|
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR<br>SOUNDVIEW HOME LOAN TRUST 2007-OPT5,<br>ASSET-BACKED CERTIFICATES,SERIES 2007-OPT5,<br>    Plaintiff<br>      vs.<br>PATCHAIMMAL BENJAMIN, et al.,<br>    Defendant(s) | CASE NO.: 2012-CA-007637-O |

## NOTICE OF FILING COPY OF ASSIGNMENT OF MORTGAGE

COMES NOW Plaintiff, WELLS FARGO BANK, N.A., AS TRUSTEE FOR SOUNDVIEW HOME LOAN TRUST 2007-OPT5, ASSET-BACKED CERTIFICATES,SERIES 2007-OPT5, by and through its undersigned counsel, and gives notice that the copy of Assignment of Mortgage which are the subject of this foreclosure action have been filed with the court.

I HEREBY CERTIFY that on _____4/11_____, 2014 a copy of the foregoing has been electronically filed with the Clerk of Courts by way of the CM/ECF system. I further certify that on said date a copy of the foregoing has been furnished either by e-mail, or by U.S. Mail, to those indicated on the attached Service List.

**FLORIDA FORECLOSURE ATTORNEYS, PLLC**

_____ David Claros, Esquire (FBN 93401)
4855 Technology Way, Suite 500
Boca Raton, FL 33431
(727) 446-4826
emailservice@ffapllc.com

Our File No: CA11-07250 /SR

Prepared by and return to:
FLORIDA FORECLOSURE ATTORNEYS, PLLC
601 Cleveland Street, Suite 690
Clearwater, FL 33755

Our File No: CA11-07250 / MG
Loan Number: ████████

```
DOC# 20120200532 B: 10362 P: 7871
04/17/2012 12:06:20 PM  Page 1 of 2
Rec Fee: $18.50
Deed Doc Tax: $0.00
DOR Admin Fee: $0.00
Intangible Tax: $0.00
Mortgage Stamp: $0.00
Martha O. Haynie, Comptroller
Orange County, FL
SA - Ret To: FLORIDA FORECLOSURE ATTOR
```

Clerks Use Only

*Assignment of Mortgage*

For Good and Valuable Consideration the sufficiency of which is hereby acknowledged, the undersigned, SAND CANYON CORPORATION FORMERLY KNOWN AS OPTION ONE MORTGAGE CORPORATION, whose address is 7595 IRVINE CENTER DRIVE, CA 92618, Assignor, by these presents does convey, grant, bargain, sell, assign, transfer and set over to WELLS FARGO BANK, N.A., AS TRUSTEE FOR SOUNDVIEW HOME LOAN TRUST 2007-OPT5, ASSET-BACKED CERTIFICATES, SERIES 2007-OPT5 Assignee, whose address is: 101 N. PHILLIPS AVENUE SIOUX FALLS, SD 57104 that certain mortgage which encumbers the real property described as:

Lot 68, SURREY PARK, according to the plat thereof, as recorded in Plat Book 25, Page 41, of the Public Records of Orange County, Florida.

together with the promissory note which it secures and all interest now due or to become due.

Said mortgage was given by PATCHAIMMAL BENJAMIN original mortgagors on August 13, 2007, and recorded on September 6, 2007, in Official Records Book 9424 at Page 3064, Public Records of Orange County, Florida.

IN WITNESS WHEREOF, the undersigned corporation has caused this assignment to be executed as a sealed instrument by its duly authorized officers.

SAND CANYON CORPORATION FORMERLY KNOWN AS OPTION ONE MORTGAGE CORPORATION

Witness

Victi Brantley

(Print Name)

Tonya Hopkins

(Print Name)

Witness

Assistant Secretary

LORI RICHARD

Insert Office

(Print Name)

Secretary

Corporate Seal

STATE OF _____ Florida _____ )

COUNTY OF _____ Duval _____ )

Produced Florida Drivers License as identification

The foregoing instrument was acknowledged before me this ___23rd___ day of ___moneh___, 20_12_, by **Tonya Hopkins** and ___N/A___ as **Assistant Secretary** and ___N/A___, respectively, of SAND CANYON CORPORATION FORMERLY KNOWN AS OPTION ONE MORTGAGE CORPORATION, each of whom is personally known to me, on behalf of the corporation.

Notary Public    Linda Bayless
Commission No.: FE 140 506
Commission Expires: 10-23-2015

Loan No.   : ███████

Notary Public State of Florida
Linda G Bayless
My Commission EE140306
Expires 10/23/2016

# SERVICE LIST

**WELLS FARGO BANK, N.A., AS TRUSTEE FOR SOUNDVIEW HOME LOAN TRUST 2007-OPT5, ASSET-BACKED CERTIFICATES,SERIES 2007-OPT5**

vs.

**PATCHAIMMAL BENJAMIN**

FLORIDA FORECLOSURE ATTORNEYS, PLLC
4855 Technology Way, Suite 500
Boca Raton, FL 33431
emailservice@ffapllc.com

TIMOTHY A. MORAN, ESQ. (ADVERSE ATTORNEY FOR PATCHAIMMAL BENJAMIN)
tim@tmoranlaw.net

WILSON BENJAMIN
2155 AMERICANA BLVD
ORLANDO, FL 32839

BANCO POPULAR NORTH AMERICA
C/O ITS PRESIDENT, VICE-PRESIDENT OR ANY OTHER OFFICER AUTHORIZED TO ACCEPT SERVICE
7 WEST 51ST STREET
NEW YORK, NY 10019

WANZO GALLOWAY, JR., ESQ. (ADVERSE ATTORNEY FOR ORANGE COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF FLORIDA)
wanzo.galloway@ocfl.net

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT IN AND FOR
ORANGE COUNTY, FLORIDA, CIVIL ACTION

WELLS FARGO BANK, N.A., AS TRUSTEE FOR
SOUNDVIEW HOME LOAN TRUST 2007-OPT5,
ASSET-BACKED CERTIFICATES,SERIES 2007-
OPT5,

        Plaintiff

        vs.

PATCHAIMMAL BENJAMIN, et al.,

        Defendant(s)

CASE NO.: 2012-CA-007637-O
DIVISION: 32A

### NOTICE OF FILING OF ORIGINAL NOTE AND ORIGINAL MORTGAGE

      COMES NOW Plaintiff, WELLS FARGO BANK, N.A., AS TRUSTEE FOR SOUNDVIEW HOME
LOAN TRUST 2007-OPT5, ASSET-BACKED CERTIFICATES,SERIES 2007-OPT5 by and through its
undersigned attorney, and gives notice of filing the attached **ORIGINAL NOTE AND ORIGINAL
MORTGAGE** in the above action.

      I HEREBY CERTIFY that on _____*April 16*_____, 2014 a copy of the foregoing has been
electronically filed with the Clerk of Courts by way of the CM/ECF system. I further certify that on
said date a copy of the foregoing has been furnished either by e-mail, or by U.S. Mail, to those
indicated on the attached Service List.

**FLORIDA FORECLOSURE ATTORNEYS, PLLC**

X_ Josh Arthur, Esquire (FBN 95506)
___ David Claros, Esquire (FBN 93401)
___ Matthew Glachman, Esquire (FBN 98967)
___ Frank J. Gomez, Esquire (FBN 90542)
___ Alan Kingsley, Esquire (FBN 44355)
___ William C. Slabaugh, Esquire (FBN 86974)
___ Vanessa Solano, Esquire (FBN 107084)
___ Marissa M. Yaker, Esquire (FBN 103591)

4855 Technology Way, Suite 500
Boca Raton, FL 33431
(727) 446-4826
emailservice@ffapllc.com

Our File No: CA11-07250 /KV

| Loan Number: ██████ | Servicing Number: ██████ | Date: 08/13/07 |

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

1853   CONCORD DR,   APOPKA, FL 32703-7677
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S.     $168,000.00     (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

Option One Mortgage Corporation, a California Corporation

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of     9.100%    . The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on     October 01    ,     2007    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on,     September 01    ,     2037    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at     Option One Mortgage Corporation
P.O. BOX 92103 LOS ANGELES, CA 90009-2103
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S.     $1,363.87    . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**(D) Application of Payments**

Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of     September 01    ,     2012    , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding     SIX     percentage point(s) (  6.000%  ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Loan Number: ▓▓▓▓▓▓     Servicing Number: ▓▓▓▓▓▓▓▓     Date: 08/13/07

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    10.600%    or less than    6.000%    . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one and a half percentage points (1.5%)    from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than 15.100% or less than    6.000%    .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.    **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due, together with accrued interest. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

*** PREPAYMENT CHARGE NOTE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF ***

6.    **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

7.    **BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    6.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

**(C) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, whether or not a lawsuit is filed. Those expenses include, for example, reasonable attorneys' fees.

8.    **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

FLNT6022.wp (03-08-07)

Loan Number: ███████████     Servicing Number: ███████████     Date: 08/13/07

10. **WAIVERS**

   I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **SECURED NOTE**

   In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

   **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

   To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

   If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12. **DOCUMENTARY TAX**

   The state documentary tax due on this Note has been paid on the Mortgage securing this indebtedness.


WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_Patchaimmal Benjamin_                    _____(Seal)          _____(Seal)
PATCHAIMMAL   BENJAMIN                    -Borrower                                              -Borrower


_____(Seal)          _____(Seal)
                              -Borrower                                              -Borrower


_____(Seal)          _____(Seal)
                              -Borrower                                              -Borrower


                                                           [Sign Original Only]


Page 3 of 3                                                                         FLNT0023.wp (03-08-07)

Loan Number ████████    Servicing Number ████████    Date: 08/13/07

# PREPAYMENT CHARGE NOTE ADDENDUM

For value received, the undersigned (the "Borrower") agree(s) that the following provisions shall be incorporated into and shall be deemed to amend and supplement the Note made by the Borrower in favor of    Option One Mortgage Corporation, a California Corporation (the "Lender"), and dated as of even date herewith (the "Note").   To the extent that the provisions of this Prepayment Charge Note Addendum (the "Addendum") are inconsistent with the provisions of the Note, the provisions of this Addendum shall prevail over and shall supersede any such inconsistent provision on the Note

**Section 5** of the Note is amended to read in its entirety as follows:

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due.  A prepayment of all of the unpaid principal is known as a "Full Prepayment."  A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."  When I make a Full Prepayment or Partial Prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a Partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If within   36 Months   from the date of execution of the Security Instrument I make a Full Prepayment or, in certain cases a Partial Prepayment, I will at the same time pay to the Note Holder a prepayment charge.  The prepayment charge will be equal to six (6) months' advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note.  In no event will such a charge be made unless it is authorized by state or federal law.

_Patchaimmal Benjan_  8/13/07
_____
Borrower PATCHAIMMAL  BENJAMIN       Date

_____
Borrower                              Date

_____
Borrower                              Date

_____
Borrower                              Date

_____
Borrower                              Date

_____
Borrower                              Date

**MULTISTATE PREPAYMENT CHARGE NOTE ADDENDUM - ADJUSTABLE RATE**
Page 1 of 1                                      USP1021.wp (05-04-07)

Loan Number: ███████    Servicing Number: ███████    Date: 08/13/07

## ALLONGE TO NOTE
### (INVESTOR)

This allonge makes reference to the following Note:

Borrowers: PATCHAIMMAL  BENJAMIN

Loan # ███████
Property Address: 1853  CONCORD DR,  APOPKA, FL 32703-7677
Loan Amount: $168,000.00

Note Date: 08/13/07

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:

Without Recourse

Option One Mortgage Corporation
A California Corporation

By: _____
    Diana Kennedy

    Assistant Secretary

Page 1 of 1

WHEN RECORDED MAIL TO:

Prepared by:

OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096
ATTN:  RECORDS MANAGEMENT

Loan Number:
Servicing Number:

Prepared By and Return to:
Karen White
Premier Title & Abstract, Inc.
455 Douglas Avenue, Suite 1755
Altamonte Springs, FL  32714

[Space Above This Line For Recording Data]

INSTR 20070586006 OR BK 09424 PG 3084 PGS=12 RECD 08/08/2007 02:41:10 PM
MARTHA O. HAYNIE, COMPTROLLER, ORANGE COUNTY
REC FEE 103.50 MTG DOC TAX 588.00 INT ANG TAX 336.00

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on August 13, 2007        .The mortgagor is
PATCHAIMMAL BENJAMIN, SINGLE

whose address is 1853 CONCORD DR , APOPKA, FL 32703-7677

("Borrower").

This Security Instrument is given to
Option One Mortgage Corporation, a California Corporation
which is organized and existing under the laws of CALIFORNIA            , and whose address is
3 Ada, Irvine, CA 92618                                  ("Lender").
Borrower owes Lender the principal sum of ONE HUNDRED SIXTY EIGHT THOUSAND
. . .AND NO/100THS    Dollars (U.S. $168,000.00              ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on September 01, 2037        .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender the following described property located in Orange
County, Florida:
24-21-28-8481-00-680
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

which has the address of 1853   CONCORD DR, APOPKA

[Street, City],

Florida        32703-7677      ("Property Address");
                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the
right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances
of record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.

FLORIDA-Single Family
Page 1 of 8                                                        FLD10011 (05/10/00)

Loan Number ████████    Servicing Number ████████    Date: 08/13/07

COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes
and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not Charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

FLD10012 (05/10/00)

Loan Num█ ████████████     Servicing Num████████     Date: 08/13/07

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Lender obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Loan Number: ███████    Servicing Num ████████    Date: 08/13/07

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender willaccept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to

FLD10014 (05/10/00)

Loan Number ███████████        Servicing Num ███████████        Date: 08/13/07

extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

FLD10015 (05/10/00)

Loan Numbe[REDACTED]        Servicing Numb[REDACTED]        Date: 08/13/07

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

**23. Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

**24. Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

**25. Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

        FLD10016 (05/10/00)

Loan Nu▮▮▮▮▮        Servicing Num▮▮▮▮▮        Date: 08/13/07

**26. Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

**27. Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**28. Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with

this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.
Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Lender their fees in connection with Lender providing documents or services arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument.

**29. Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

**30. Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

**31. Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

**32. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☒ Adjustable Rate Rider        ☐ Condominium Rider        ☐ 1-4 Family Rider
☐ Manufactured Home Rider      ☐ Planned Unit Development Rider    ☐ Occupancy Rider
☐ Other(s) (specify)

Page 7 of 8                                                FLD10017 (05/10/00)

Loan Nu████████████       Servicing Num███████████       Date: 08/13/07

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____       _____ (Seal)
                        Witness                                -Borrower


_____       _____ (Seal)
                        Witness                                -Borrower


_____ (Seal)        _____ (Seal)
PATCHAIMMAL   BENJAMIN   -Borrower                             -Borrower


_____ (Seal)        _____ (Seal)
                        -Borrower                             -Borrower

STATE OF FLORIDA, County ss:  Seminole

The foregoing instrument was acknowledged before me this _____ 8/13/07 _____ by

Patchaimmal Benjamin

who is personally known to me or who has produced ____ FDL ____ as identification.

_____
Notary Public

ELAINE HEDGES
NOTARY PUBLIC - STATE OF FLORIDA
COMMISSION # DD446165
EXPIRES 6/29/2009
BONDED THRU 1-888-NOTARY1

Page 8 of 8                                           FLD10018 (05/10/00)

Loan Number: ███████   Servicing Number: ███████   Date: 08/13/07

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made August 13, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

1853  CONCORD DR,  APOPKA, FL 32703-7677

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**The Note** provides for an initial interest rate of         9.100%         . The Note provides for changes in the interest rate and the monthly payments, as follows:

4.   **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
     **(A) Change Dates**
     The interest rate I will pay may change on the first day of   September 01 2012 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
     **(B) The Index**
     Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
     If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
     **(C) Calculation of Changes**
     Before each Change Date, the Note Holder will calculate my new interest rate by adding
     SIX                              percentage point(s) ( 6.000%   ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

Loan Number: ██████████    Servicing Number: ██████████    Date: 08/13/07

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.600% or less than    6.000%            . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than         one and a half percentage points (1.5%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than     15.100%       or less than      6.000%        .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 2 of 3

USRI0022 (03-08-07)

Loan Number: ███████   Servicing Number ███████   Date: 08/13/07

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Patchaimmal Benjan_____ (Seal)   _____ (Seal)
PATCHAIMMAL   BENJAMIN

_____ (Seal)   _____ (Seal)

_____ (Seal)   _____ (Seal)

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family**
Page 3 of 3

USRI0023 (03-08-07)

EXHIBIT A

Lot 68, SURREY PARK, according to the plat thereof, as recorded in Plat Book 25, Page 41, of the Public Records of Orange County, Florida.

**SERVICE LIST**

**WELLS FARGO BANK, N.A., AS TRUSTEE FOR SOUNDVIEW HOME LOAN TRUST 2007-OPT5, ASSET-BACKED CERTIFICATES,SERIES 2007-OPT5**

vs.

**PATCHAIMMAL BENJAMIN**

FLORIDA FORECLOSURE ATTORNEYS, PLLC
4855 Technology Way, Suite 500
Boca Raton, FL 33431
emailservice@ffapllc.com

WILSON BENJAMIN
2155 AMERICANA BLVD
ORLANDO, FL 32839

BANCO POPULAR NORTH AMERICA
C/O ITS PRESIDENT, VICE-PRESIDENT OR ANY OTHER OFFICER AUTHORIZED TO ACCEPT SERVICE
7 WEST 51ST STREET
NEW YORK, NY 10019

LAW OFFICE OF TIMOTHY A. MORAN (ADVERSE ATTORNEY FOR BENJAMIN, PATCHAIMMAL)
1750 WEST BROADWAY STREET
SUITE 118
OVIEDO, FL 32765-9618
tim@tmoranlaw.net

ORANGE COUNTY ATTORNEY`S OFFICE (ADVERSE ATTORNEY FOR ORANGE COUNTY, A POLITICAL
SUBDIVISION OF THE STATE OF FLORIDA)
201 S ROSALIND AVE
FL 3
ORLANDO, FL 32801-3527
wanzo.galloway@ocfl.net